# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-00809-SCT

*TERESA FERGUSON, INDIVIDUALLY AND ON*
*BEHALF OF RUSTY FERGUSON, A MINOR*

*v.*

*BOBBY SNELL AND GUIDEONE MUTUAL*
*INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 02/13/2002 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | MICHAEL S. ALLRED |
| | KATHLEEN H. EILER |
| ATTORNEYS FOR APPELLEES: | WILLIAM W. McKINLEY, JR. |
| | PHILLIP W. GAINES |
| | TIMOTHY D. MOORE |
| | WADE G. MANOR |
| | KENNETH TREY O'CAIN |
| | BRIAN DOUGLAS MAYO |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED – 12/16/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1. This appeal is from an action for negligence resulting from an automobile accident between Teresa Ferguson and Bobby Snell. The jury returned a verdict in favor of defendants, Snell and GuideOne Mutual Insurance Company. However, the jury specifically found

GuideOne included language in its policy which was unauthorized by Mississippi law, and awarded Ferguson $25,000 in actual, extracontractual damages and $1,000,000 in punitive damages. Ferguson's motion for judgment notwithstanding the verdict as to the verdict in favor of Snell was subsequently denied. GuideOne's motion for judgment notwithstanding the verdict was granted, and the trial court entered a judgment in favor of GuideOne. We are called upon to consider whether the trial court erred in admitting certain documents into evidence and whether the denial of Ferguson's motion for judgment notwithstanding the verdict as to Snell was proper. Finding no reversible error, we affirm the trial court's judgment.

## FACTS AND PROCEEDINGS BELOW

¶2.     This suits stems from an accident between Teresa Ferguson and Bobby Snell. Ferguson was traveling north on Highway 51, and Snell was driving south in a pickup truck with a cattle trailer hitched to it. As the two vehicles passed each other, two tires spun off Snell's cattle trailer; one of the tires hit Ferguson's car. She suffered spine, wrist, arm, and shoulder injuries as a result of that collision. Ferguson's son, Rusty, suffered minor injuries.

¶3.     Ferguson contended that Snell was negligent in maintaining the wheels on the trailer, urging that the wheels on the cattle trailer were not sufficiently tightened and that the center holes of the tires were "wallowed out." Most importantly, Ferguson further contended that Snell had actual knowledge of the condition of the tires but failed to keep them adequately inflated.

¶4.     In response, Snell offered that he performed a walk-around inspection to ascertain if any of the tires were low on air before he started his trip. After commencing his trip, upon discovering that one of the tires needed air, Snell inflated it. The tire separation did not occur

2

until three hours into Snell's trip with a fully-loaded trailer. This testimony was presented at trial, and the jury concluded that Snell acted with reasonable care under the circumstances and did not cause or contribute to the alleged injuries of Ferguson.

¶5. At the time of the accident, Snell had insurance coverage with liability limits of $25,000 for medical injuries. Ferguson=s vehicle was insured with GuideOne Mutual Insurance Company, and after the accident, she filed a claim for underinsured motorist benefits in the event that her damages were greater than the amount covered by Snell=s liability insurance. Ferguson knew that such coverage would compensate her for any difference between her actual bills and Snell's coverage. After GuideOne reviewed Snell=s insurance policy, it determined that he was not underinsured. GuideOne concluded that the liability insurance coverage amount was equal to the coverage Ferguson had under her underinsured motorist benefits. Ferguson then filed a claim against GuideOne alleging bad faith denial of her claim, stating that she had two vehicles insured by her GuideOne policy with uninsured/underinsured coverage. She alleged that the limits were $100,000 per person/$200,000 per occurrence.

¶6. At trial, the jury was given 12 special interrogatories. It returned a verdict that Snell had not been negligent. The jury also found that Ferguson had uninsured motorist liability in the amount of $25,000 per person/$50,000 per accident and that the coverage applied only to one vehicle. The jury also specifically found that GuideOne was not liable for bad faith or for the breach of any implied covenants or express contracts. However, the jury did find that GuideOne had included language in its insurance policy which was unauthorized by Mississippi law, although such an action did not amount to fraud. The jury awarded Ferguson $25,000 in actual, extracontractual damages and $1,000,000 in punitive damages.

3

¶7.     Ferguson filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial as to the verdict in favor of Snell. The trial court denied her motion. GuideOne also filed a motion seeking a j.n.o.v. regarding the verdict against it. The trial court granted this motion and entered judgment for GuideOne. Ferguson appeals, arguing there were two flaws in the trial below. Because there was no error, we affirm the decision of the trial court.

## DISCUSSION

### I.   Did the trial court abuse its discretion in admitting certain computer-generated documents into evidence?

¶8.     The admission or exclusion of evidence is within the discretion of the trial judge and will not be reversed absent an abuse of that discretion. *Gaines v. K-Mart Corp.,* 860 So.2d 1214, 1219 (Miss. 2003); *Barrett v. Parker,* 757 So.2d 182, 183 (Miss. 2000); *Broadhead v. Bonita Lakes Mall, Ltd.,* 702 So.2d 92, 102 (Miss. 1997); *Sumrall v. Miss. Power Co.,* 693 So.2d 359, 365 (Miss. 1997). Ferguson claims the jury=s finding that GuideOne=s policy afforded only $25,000 in uninsured motorist coverage to Ferguson was based upon unauthenticated hearsay which should never have been admitted into evidence. Ferguson further argues that she established at trial that the only insurance policy and declarations sheet which had been issued to her by GuideOne showed that two vehicles were insured. Therefore, because two vehicles were insured, Ferguson claims that the uninsured motorist limit of $25,000 per vehicle should have been stacked, thereby affording $50,000 in uninsured motorist coverage.

¶9.     However, GuideOne did not pay uninsured motorist benefits to Ferguson based on the assertion that there was only one vehicle covered under the policy. GuideOne determined that

4

the applicable uninsured motorist liability limit was $25,000. Consequently, GuideOne found that its uninsured motorist limits did not exceed the liability of Snell and that Snell=s vehicle was not underinsured. Therefore, according to GuideOne, no benefits were due to Ferguson.

¶10. The evidence offered by GuideOne in support of its assertion that only one vehicle was insured under the policy was made in the form of previously "purged" computer generated documents. The evidence was admitted under the business records exception of Miss. R. Evid. 803(6), which provides that such records are admissible upon a showing of the following foundation requirements:

(1) the statement is in written or recorded form;
(2) the record concerns acts, events, conditions, opinions or diagnoses;
(3) the record was made at or near the time of the matter recorded;
(4) the source of the information had personal knowledge of the matter;
(5) the record was kept in the course of regular business activity; and
(6) it was the regular practice of the business activity to make the record.

¶11. Ferguson argues that the purged computer generated documents showing that only one car was insured by GuideOne failed to meet the business records exception for a number of reasons. First, Ferguson asserts that the document was not prepared at or near the relevant dates of the policy period for which it purports to provide a record. Ferguson=s policy from 1997 through 1999 was actually prepared on October 25, 2001. Second, Ferguson asserts that the sponsoring witness, Sue Anderson, did not have personal knowledge of the matter because she did not actually input the information into the computer and was not a custodian of the records for GuideOne. Additionally, Ferguson argues that the documents were not kept in the course of regularly conducted business because Anderson testified that GuideOne did not

regularly prepare any record of policy activity following a purge of such records. These arguments are misplaced.

¶12.    Under Rule 803(6), the focus is properly placed on the time period when the documents were created, the trustworthiness of the documents, and whether their creation was in the regular course of business. The record reveals that these documents were created in the regular course of business by an employee of GuideOne, although Anderson was not the exact employee that entered the data into the computer system. Yet "it is not necessary to call or to account for all participants who made the record." *Miss. Gaming Comm'n v. Freeman*, 747 So.2d 231, 242 (Miss. 1999); Miss. R. Evid 803(6) cmt. It is only necessary that testimony concerning the source of these documents is offered by an individual "with knowledge who is acting in the course and scope of the regularly conducted activity." *Id.*

¶13.    In the case at bar, Anderson testified to the contents and identification of the computer generated documents. She was an employee of GuideOne with the knowledge of the contents of the computer-generated document, its preparation, and how to access the documents from storage on her computer. Anderson testified to the contents of the document in question, which recorded every transaction on the insurance policy, and to exactly how each number on the page came to be. She further testified as to how the computer system functioned and explained that the computer makes some entries automatically. The record reflects that each of the entries were done in the course of regular business with GuideOne.

¶14.    This amount of knowledge fully conforms to the requirements of our Rules of Evidence. GuideOne=s sponsoring witness was well-versed with the knowledge required under

the rule, provided testimony that authenticated the documents under Miss. R. Evid. 901(b), and also demonstrated to the trial court that the records were trustworthy and reliable.

¶15. Additionally, Ferguson≠s counsel had ample opportunity to cross-examine Anderson as to the trustworthiness and the reliability of these documents, and did so. Counsel also used an expert witness for the sole purpose of impeaching Anderson's testimony and the documents. The expert witness testified that there were no documents to support the information of the purged computer-generated document and that the computer-records lacked credibility. The trial court afforded Ferguson every opportunity to call into question the validity of the document; the jury apparently weighed the impeachment evidence in reaching its verdict. We hold that there was no abuse of discretion in allowing the computer-generated documents into evidence.

## II. Did the trial court err by denying Ferguson's motion for judgment notwithstanding the verdict?

¶16. When a trial judge denies a motion for a judgment notwithstanding the verdict, we will review all of the evidence in the light most favorable to the party opposed to the motion. *See Upchurch ex rel. Upchurch v. Rotenberry*, 761 So.2d 199, 204 (Miss. 2000). If the facts and inferences from this evidence point so overwhelmingly in favor of the movant that reasonable jurors could not have arrived at a contrary verdict, the motion would be properly granted. *Id.* On the other hand, if there is evidence of such quality and weight that reasonable and fairminded jurors in the exercise of impartial judgment might reach different conclusions, the jury verdict should be allowed to stand, and the motion would be properly denied. *Id.*

7

¶17.	While it is undisputed that the tires actually came off the trailer, the parties have hotly contested whether negligence was the culprit.  On the morning of the accident, Snell borrowed the cattle trailer from Michael Lewis  and performed a walk-around inspection of the trailer and checked the tires. One tire was low, so he added air.  This was at approximately 9:00 a.m. Snell had been towing the trailer for a little more than three hours when the two tires came off the trailer.

¶18.	At trial, Snell testified that the tire was low after the trailer was loaded with cattle,  but that he did not know whether it had a leak.  He further testified that the trailer was "tracking" properly while being towed and nothing was out of the ordinary until the accident occurred. He was driving within the speed limit and did not lose control of his truck at the time of the accident.

¶19.	Ferguson argued  that Snell was negligent in failing to stop within those three hours of travel and in failing to check the air in the tire.  The jury rejected such a burden and concluded that his actions and inspection were reasonably diligent and did not rise to the level of negligence.

¶20.	In *City of Jackson v. Locklar*, 431 So.2d 475, 478-79 (Miss. 1983), we affirmed a trial court=s denial of j.n.o.v. and related that "[o]ur institutional role mandates substantial deference to the jury=s finding of fact and to the trial judge=s determination whether a jury issue was tendered."  We may look at the cold black and white of the transcribed record, but we do not have the benefit of "observ[ing] the manner and demeanor of the witnesses." *Id.* at 479. Therefore "[t]he trial judge's determination whether . . . a jury issue has been presented, must per force be given great respect here." *Id.*

8

¶21. In the case at bar, the jury was presented with all of the facts pertaining to the case, and it found sufficient evidence to exonerate Snell of all negligence. While reasonable and fairminded jurors may have reached a different conclusion, there was sufficient evidence introduced at trial to reasonably conclude that Snell was not negligent. Accordingly, there was no error in the trial court's refusal to grant the motion.

## CONCLUSION

¶22. Because the trial court did not abuse its discretion in allowing the purged computer-generated documents into evidence and because the denial of Ferguson's motion for j.n.o.v. was not in error, the judgment of the trial court is affirmed.

¶23. **AFFIRMED.**

**SMITH, C.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. WALLER, P.J., AND RANDOLPH, J., CONCUR IN RESULT ONLY. COBB, P.J., AND DIAZ, J., NOT PARTICIPATING.**